## Charles Houchens, Administrator, Appellee, v. William Houchens et al., Appellants.

1. Insane persons—*conservator's report.* The report of a conservator charging for personal services, filed after the death of his ward, made a part of his subsequent report as "conservator and administrator," and approved by the court without notice to the heirs at law, is not a final adjudication of such claim, but is open to investigation on hearing of a petition to sell real estate for the payment of debts.

2. Insane persons—*compensation of conservator.* A claim of a conservator, for personal services rendered his ward is improperly allowed, where the evidence, though somewhat conflicting, shows with considerable clearness that the ward conveyed sixty acres of land to his daughter in consideration of her caring for and supporting him, that although the conservator did render such services he disclaimed any intention to charge therefor.

Appeal from the County Court of Marion county; the Hon. Charles E. Jennings, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed June 5, 1912.

CHARLES H. HOLT and W. G. WILSON, for appellants.

D. D. HAYNIE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee, as administrator of the estate of Charles Houchens, Sr., deceased, filed a petition in the County Court of Marion county, for the sale of real estate to pay debts. With the petition was filed an exhibit, verified by the petitioner, showing that the liabilities of the estate, including the sum of $100.00 for costs due and to accrue, exceeded the assets by $226.19. One of the defendants Maria Shanafelt, a daughter of the intestate and sister of appellee, filed an answer, denying appellee's right to a sale of the premises.

Upon the trial the County Court found in favor of appellee and ordered the premises to be sold, from which order Mrs. Shanafelt has appealed to this court.

On July 25, 1901, as shown by the proofs, appellee was appointed conservator of his father, Charles Houchens, Sr., then some 83 years of age, and took charge of the property of his ward. He filed reports from time to time in the County Court, in which, prior to the death of his ward, he took credit for ten dollars per annum for his fees as conservator. After the death of Charles Houchens, Sr., which occurred in November, 1908, appellee was appointed administrator of his estate and proceeded to settle the same.

On January 11, 1909, appellee as conservator, filed his report, showing a balance in his hands of receipts over credits, amounting to $440.65. In this report appellee took credit for a "conservator fee from May 31, 1907, to November 29, 1908" of $15, also credited himself with $262.50 for "taking constant care of Charles Houchens, Sr., from April 29, 1908 to November 29, 1908, day and night—210 days at $1.25 per day and night." No notice was given to the heirs at law of the filing of this report and the same was approved by

the court without notice to them. Afterwards, on the 6th day of March, 1911, appellee as "conservator and administrator of the estate of Charles Houchens, Sr., deceased" filed a report from which it appeared that there was a balance "due the administrator as deficit of $126.19." On the same day and before the approval of the report, this petition for the sale of real estate was filed. In order to arrive at the deficiency above mentioned, it was necessary that appellee should have the credit of $262.50 for taking care of his father as above mentioned.

Appellant on the trial of this cause contested the allowance of that claim and contends here that the County Court erred in permitting the same to be charged against the estate. The report of the conservator made January 11, 1909, in which the conservator charges for his personal services in taking care of his father, having been filed after the death of the latter and approved without notice to the heirs at law, and being in effect made a part of the subsequent report of appellee as "conservator and administrator," cannot in our opinion be treated as a final adjudication of appellee's claim but must on the hearing of this petition to sell real estate be subjected to the same rules which would apply to the report of an administrator. It has long been a settled rule in this state that the allowance of a claim against an estate is only *prima facie* as against an heir at law and is open to investigation on the hearing of a petition for an order to sell real estate to pay the debts of the estate. Goeppner v. Leitzelmann, 98 Ill. 409; Stone v. Wood, 16 Ill. 177.

The only question, therefore, presented to us for consideration is, whether the court below erred in sustaining the claim of appellee for personal attention given to his father as a charge against the estate.

It appeared from the proofs that on April 6, 1893, the intestate Charles Houchens, Sr., and his wife Susanna, conveyed sixty acres of real estate to their

daughter Mary Ellen Johnson, upon the consideration that she should support, board, clothe and care for them in a suitable manner during their natural lives. Mrs. Johnson was a witness on the trial and testified, "I was willing to and did care for him and furnish all necessary nurse hire, board and clothing in accordance with the contract with him." She further said that appellee did assist in caring for her father in his last illness; that she and her husband told him if he was going to make any charge for his services, they would pay it as they had contracted to support, maintain and care for him; that appellee said if we had to pay it he never would charge anything. In these statements she was corroborated by her husband.

Appellee was also a witness in his own behalf and permitted to testify over the objection of appellant. Waiving the question of the competency of appellee as a witness, there was nothing in his testimony which tended to show that he expected to charge for the services which he rendered his father.

In view of all these circumstances, we are of opinion there can be no presumption that appellee intended to charge and receive pay for his services to his father and that in the absence of express contract he cannot recover for them. Intestate's mental condition was such that he could in fact have made no express contract for the services of appellee and the same is not claimed, and therefore the County Court erred in sustaining the claim of appellee for $262.50 for personal services.

The order of the court below will accordingly be reversed and the cause remanded.

*Reversed and remanded.*