[No. 8424.]

McLaughlin et al. v. Rote, Administrator, et al.

1. County Courts—*Equitable Jurisdiction in Administration.* The County Courts are clothed with equitable powers in the settlement of estates, and, upon bill brought for that purpose, may vacate the allowance of a claim for fraud in procuring such allowance.

Fictitious claims had been allowed against a decedent's estate, and the sale of the real estate ordered, made, and approved. Nonresident heirs, having no notice of any step in these proceedings, thereupon filed in the County Court a petition praying a vacation of the orders allowing the claims, and all subsequent proceedings, the removal of the administrator, and for general relief. The right of no third party had intervened. *Held,* error in the County Court to reject the petition.

2. ——*Final Judgment—Appeal to District Court.* Petition by the heirs of a decedent to vacate the fraudulent allowance of fictitious claims against the estate, and the sale of the real estate in satisfaction thereof. Petition dismissed, administrator's account approved, and administrator discharged. Appeal to the District Court. *Held,* that the judgment below was a final judgment, and the District Court should have entertained the petition.

*Error to Arapahoe District Court.* H. S. Class, Judge.

Mr. John J. Morrisey, Mr. Charles T. Mahoney, Mr. William H. Scofield, Mr. Joseph J. Walsh, for plaintiffs in error.

Mr. F. W. Sanborn, Mr. George Allan Smith, for defendants in error.

Mr. Justce Garrigues delivered the opinion of the court.

*Statement of the Case:*

Michael McLaughlin died April 8, 1910, leaving a last will and testament in which he gave to his brother James, $2,000.00, to his brother Edward, $2,300.00, and the residue of the estate to three sisters and a brother, share and share alike. The property consisted principally of real estate. Edward was named as executor in the will, and April 15th filed a petition to have it probated and for letters testamentary. Citation was issued to the heirs and legatees. June 10, 1910, letters testamentary issued to Edwarh, who duly qualified. June 13, 1910, the will was admitted to probate. September 28, 1910, the estate was appraised at $5,200.00. January 25, 1911, Edward, as executor, filed a petition to sell real estate at private sale, alleging as the basis thereof: "That the just claims to be presented and allowed against the estate will probably amount to the sum of $8,000.00." At this time neither he nor his wife had

filed any claims against the estate, but February 24, 1911, he filed a claim for 165 weeks board of the deceased, loss of his wife's services while nursing him for that period, taxes, repairs, money expended, plumbing, medicines and electrical wiring, aggregating $5,179.00, and the same day his wife filed a claim for 165 weeks nursing and care and attention of deceased at $15.00 per week, aggregating $2,475.00. March 6, 1911, Edward tendered his resignation as executor, which was accepted. March 11, 1911, he filed a petition praying that one Rote be appointed administrator *cum testamento annexo de bonis non*, and at the same time filed his report and was discharged as executor. On the same day the court issued letters of administration with the will annexed, to Rote, and at the same time entered a decree for the sale of the real estate in accordance with the prayer of the petition filed by the executor January 25, fixed April 15, as the date of sale, and the administrator was directed to deposit the money received for the property in court. April 10, 1911, while the property was being advertised for sale, a formal hearing was had on the claims filed by the executor and his wife, and they were allowed without contest. It is the allowance of these claims, and the sale of the real estate, that gives rise to the case being here for review. On the date fixed, April 15, the administrator filed his report reciting that he had that day sold the property to Edward and his wife for $6,700.00, which he credited on their claim allowed against the estate, and the same day the court entered an order confirming the sale. June 26, 1911, was set as the day for the administrator's final settlement, and at that time he filed his final report and asked that he be allowed to make distribution and be discharged.

Plaintiffs in error, the brothers and sisters of the deceased other than Edward, lived in Ireland, and had

no notice of the proceedings wherein the claims of Edward and his wife were allowed, or that such claims were made or had been filed, or existed, or of the proceeding for the sale of real estate, in time to resist or contest either. Edward had written to Ireland requesting them to relinquish any claim they might have in the estate, stating that the property was of little value; but this request was refused and as soon as they were advised of the true situation, which was after the claims had been allowed and the land had been sold at administrator's sale, they employed counsel, and June 26, 1911, filed a petition and accompanying objections in which they alleged their relationship to the deceased; that instead of the estate being indebted to Edward and his wife, they owed the estate a large amount of money which the administrator had failed to collect; that the claims filed by Edward and his wife were fraudulent, fictitious, and had no existence or foundation in fact or in law or equity; that the claims were allowed without their knowledge, and without any resistance on the part of the administrator, when he knew or should have known in the exercise of reasonable care, that they were fraudulent and fictitious, and were made for the sole purpose of depriving petitioners of their interest in the estate; that the administrator wilfully wasted and mismanaged the estate, failed to protect it, and fraudulently and collusively attempted to divert the property belonging to the estate into the hands of Edward; that the petition did not give the court jurisdiction to sell the real estate becasse it did not set forth the matters and things required by the statute to authorize the sale of land, and did not contain a statement of the amount of claims on file, or the amount of claims allowed against the estate, but alleged that the just claims to be presented would probably amount to $8,000.00; and prayed that the order allowing the claims

be vacated; that the administrator's sale be set aside as fraudulent and void, the deed cancelled, and the title quieted in the estate; that the executor be deprived of the right to participate in the distribution; that the administrator be removed and deprived of compensation, for costs, and general equitable relief.

July 31, 1911, the matter of approving the administrator's final report, and his discharge, came on for hearing, and on motion of the administrator the petition and objections and affidavit in support thereof were all stricken from the files, and the final report as amended by the supplemental report of July 29th, was approved, and the administrator discharged. From this final order, objectors perfected an appeal to the District Court, where the matter came on for trial May 26, 1913. The District Court was requested to assume jurisdiction of the matter, under the petition, which it refused to do, and after taking evidence on the objections, it found that the hearing on the allowance of the claims in the County Court was an ex parte affair; that the administrator had been imposed upon by the claimants; that the cause in the District Court was on appeal from the order of the County Court of July 31, 1911, denying the petition, overruling the objections, approving the final report, and discharging the administrator; that as a matter of law, the allowance of the claims April 10, 1911, in the County Court was a final judgment from which no appeal was taken; that the appeal to the District Court was an attempt to relitigate the claims, the allowance of which was *res judicata,* and dismissed the appeal.

*Opinon of the Court:*

1. Objectors lived in Ireland and had no notice of the claims, of their allowance or of the proceeding to sell real estate until shortly before the hearing on final settlement, were not present and took no part therein,

so that they were not able to appeal from the orders theretofore entered. But under the circumstances appeal was not their only remedy. The allowance of the claims could be directly attacked in the County Court upon a proper showing, before approval of the final report and discharge of the administrator.

County Courts have original jurisdiction in probate matters, and under the statute are clothed with equitable powers in the settlement of estates, in the exercise of which they can vacate and set aside the allowance of claims when attacked upon the ground of fraud in the procurement of judgments thereon.

The want of notice and inability of objectors to appeal is clearly shown, and the case appeals strongly to the equitable powers of the court. The petition for, and sale of the real estate was based upon the allowance of these alleged fraudulent claims; the court ordered the proceeds of the sale to be paid into court, which order was disregarded. Claimants were the successful bidders, but they paid no money to the administrator and in fact, no money whatever passed in the transaction, the administrator simply taking their receipts for the amount of their claims and giving them an administrator's deed.

At the time the petition and objections were filed, the entire matter was pending in court. The action was not an attempt by objectors to render the administrator liable for failure of duty, but was for the purpose of vacating and setting aside the allowance of the claims. All the parties were before the court, a *lis pendens* had been filed, and the rights of no third parties had intervened. The allegatons of the petition and objections directed the attention of the court, in no uncertain language, to the alleged fraudulent character of the claims, and under all the circumstances, it was error for it to refuse to take jurisdiction and try the matters presented. It declined

to entertain the petition, overruled the objections, approved the final report and discharged the administrator. This was a final judgment, from which objectors appealed to the District Court, where the case then stood for trial *de novo* and that court should have entertained jurisdiction.

That the allowance of the claims, in the circumstances of this case, could be directly attacked by the method pursued, we have no doubt, and while the practice in probate matters in this character of cases does not seem to be definitely settled, we cite the following authorities as tending to support the views we have expressed.— *Great West Co. v. Woodmas Co.,* 12 Colo. 46-60, 20 Pac. 771, 13 Am. St. Rep. 204; *Clemes v. Fox,* 25 Colo. 39, 53 Pac. 225; *Taylor v. Marshall,* 56 Colo. 214, 138 Pac. 25; *Clemes v. Fox,* 6 Colo. App. 377-383, 40 Pac. 843; *Marshall v. Coleman,* 187 Ill. 556-569, 58 N. E. 628; *Schlink v. Maxton,* 153 Ill. 447-452, 38 N. E. 1063; *Goeppner v. Leitzelmann,* 98 Ill. 409-414; *Gibson v. Gibson,* 82 Ill. 61; *Rabbett v. Connolly,* 153 Iowa 607, 133 N. W. 1060; *In re Estate of Davenport,* 85 Iowa 293, 52 N. W. 197; *Davis v. Rhea,* 90 Ark. 261-263; *Lancaster v. Gould,* 46 Ind. 397-400; *Fitzpatrick v. Stevens,* 114 Mo. App. 497, 89 S. W. 897; *Garr v. Harding,* 37 Mo. App. 24-30; *Hurlbut v. Hutton,* 44 N. J. Eq. 302-307, 15 Atl. 417; *Lehman v. Bradely,* 62 Ala. 31; *Teague v. Corbitt,* 57 Ala. 529; *Pearson v. Darrington,* 32 Ala. 227; *Burnham v. Burnham,* 46 App. Div. 513, 62 N. Y. Supp. 120; *Burnham v. Burnham,* 165 N. Y. 659, 59 N. E. 1119; *Daingerfield v. Smith,* 83 Va. 81-90, 1 S. E. 599.

The judgment is reversed and the cause remanded with directions to allow objectors to amend their pleadings in the District Court if they desire; to permit claimants to plead as they may be advised and to proceed to a

trial of the issues thus raised in accordance with the views herein expressed.

*Reversed and Remanded.*

Chief Justice White and Mr. Justice Scott concur.