WILLIAM DORRIS, Executor, with Will Annexed of the Estate of JOHN F. MILLER, Deceased, Appellant, v. W. M. MILLER.

**Executors:** COUNSEL FEES. Counsel fees of an executor in setting aside and revoking ancillary administration erroneously granted to defendant in another state cannot be recovered from such defendant where no malice on defendant's part is pleaded or proven; and even conceding that defendant had no right to apply for administration, and that his conduct was tortious, the fees are not recoverable. The motive with which a person exercises a legal right is immaterial.

**SAME:** *Fraud.* Counsel fees paid out by one in an unsuccessful attempt to retain ancillary administration of an estate cannot be recovered from the estate, especially where such person made false and untruthful statements in his petition for such administration.

**SETTLEMENT:** *Construction of statute.* One appointed as ancillary administrator, in his endeavor to retain such position, was allowed by the probate court counsel fees, under the mistaken idea that he was entitled to represent the estate, and such order has not been set aside or vacated On appeal, his appointment was reversed. There was no necessity of any ancillary administration, of which he had knowledge, and his acts in petitioning therefor lacked but little, if anything, of fraud. *Held* that, in an action by the estate against him, he was liable for the amount of such fees, under Code, 1873, section 2474, providing that mistakes in settlements may be corrected at any time before the discharge of the executor; and Code, 1873, section 2475, limiting the time to three months within which applications may be made to open up accounts of executors and administrators settled in the absence of parties in interest, has no application to mistakes or fraud in the settlement of an administrator's intermediate account.

**INTEREST ON FUNDS.** An ancillary administrator is not chargeable with interest on the funds held by him where he retained them for less than a year and was not asked to make distribution to the legatees and made no profit therefrom except what incidental profit may have been derived from depositing the funds subject to check in the bank of which he was president.

**TAXATION.** The money in the hands of an executor or administrator is not exempt from taxation for the reason that it is not being loaned or invested, especially where taxes are not paid on same at the principal place of administration.

*Appeal from Black Hawk District Court.*—HON. J. J.
TOLERTON, Judge.

THURSDAY, MAY 19, 1898.

SUIT in equity for an accounting between plaintiff,
who is executor of the will of John F. Miller, deceased,
and defendant, who at one time acted as administrator
of the estate of said John F. Miller, under appointment
from the district court of Black Hawk county. The trial
court gave plaintiff judgment for two thousand, fifty-six
dollars and sixty cents, and both parties appeal. As
plaintiff first perfected his appeal, he will be called the
"appellant."—*Affirmed.*

*N. M. Hubbard* and *O. C. Miller* for appellant.

*F. C. Platt* and *Boies & Boies* for appellee.

DEEMER, C. J.—John F. Miller died, testate, in the
state of Pennsylvania, August 24, 1893. Defendant,
W. M. Miller, is his nephew. About the year 1874, John
F. Miller placed nineteen thousand dollars in money in
the hands of his nephew, to be loaned in the states of
Iowa and Kansas. At the time of his death, this fund
amounted to about thirty-six thousand dollars. The
uncle also held a note of about five thousand dollars
against his nephew. The John F. Miller estate was
appraised at seventy thousand dollars, and the will
devised the same to the nephews and nieces, and sisters
and stepsisters of the deceased. Plaintiff was
named as the executor of the will, and a bequest
was made to him in the trust for certain uses. Shortly
after the death of John F. Miller, plaintiff wrote
defendant a letter notifying him of his uncle's
death, informing him that he (plaintiff) had been

named as executor, and requesting defendant to send him all the securities belonging to the estate. Instead of complying with the request, defendant petitioned the district court of Black Hawk county for appointment as administrator of the estate of his deceased uncle, stating that the validity of the will had been denied by the heirs, and that objections to the probate thereof in the state of Pennsylvania had been and would be urged. He also stated that deceased had personal property in this state to the amount of about thirty-six thousand dollars, and that he was owing an unknown amount to various residents and corporations of this state. On the ninth of September, 1893, defendant was appointed administrator in this state, and he immediately wrote the executor that he had been so appointed, and refused to turn over the assets in his possession. Thereupon plaintiff applied to the Black Hawk district court for auxiliary letters and the probate of the will in this state. This petition was granted, and plaintiff was appointed executor with will annexed on September 29, 1893. On the third of October, 1893, plaintiff filed a motion to set aside and revoke the letters of administration issued to the defendant, and within a few days thereafter the motion was granted, the letters so issued were canceled, and defendant was ordered to turn over to the executor all property of the estate in his hands. The order was conditioned upon plaintiff's filing bond in the sum of seventy-five thousand dollars. The executor appointed by the will found difficulty in securing resident sureties, and, while engaged in this work, the ten days in which resident administrators are required to file bond expired. Thereupon defendant filed a petition for appointment as administrator with will annexed, on the ground that there was a vacancy caused by plaintiff's failure to qualify. No notice was given appellant of this petition. The

application was granted, and letters issued to appellee on the eighth day of November, 1893. Dorris appealed from this order, and, upon a hearing in this court, the case was reversed. See 92 Iowa, 741. The opinion was filed on the seventeenth day of December, 1894. On the sixteenth day of March, 1895, defendant turned over to plaintiff twenty-seven thousand, nine hundred and ninety-seven dollars and fifty-one cents in cash and six thousand, six hundred and sixty-five dollars and ten cents in notes; and on April 29, 1895, he turned over four thousand, two hundred and sixty-eight dollars in money, and also gave plaintiff a receipt for one thousand dollars, being the amount of his legacy under the will. Plaintiff claims there is yet due him interest on all the money while in the hands of the defendant after the death of his uncle, and before payment to the lawfully appointed executor, the sum of one thousand dollars wrongfully paid by the defendant to his attorneys, the sum of one thousand dollars withheld to pay an alleged additional claim of his attorneys, the sum of one thousand, four hundred and fifty-seven dollars and thirty-five cents wrongfully withheld by defendant as compensation for his services as administrator, and a further sum retained by him to pay the taxes and the costs of the litigation growing out of the several appointments. Plaintiff also asks to recover as damages the amount paid out by him as costs and attorneys' fees in endeavoring to preserve the estate and remove the defendant. The total amount claimed by plaintiff is something over ten thousand dollars. The trial court, as we have said, allowed the plaintiff the sum heretofore stated, made up of the one thousand dollars paid by the defendant to his attorneys, four hundred and fifty-seven dollars and thirty-five cents withheld by defendant as compensation for his services, and five hundred and ninety-nine dollars and twenty-five cents yet in defendant's hands,

belonging to the estate. It also made an order disallow-ing the claim of one thousand dollars for additional attorneys' fees, and denying the defendant compensa-tion for services as administrator. It further denied plaintiff's claim for attorneys' fees and costs, and refused to charge the defendant with interest on the funds in his hands after the death of his uncle, or with the amount paid as taxes. The plaintiff appeals from that part of the order denying him an allowance for attorneys' fees and costs made necessary by defendant's intermeddling with the estate, and refusing to charge the defendant with interest on the funds while in his hands and the amount of taxes paid; and the defendant appeals from the order denying him attorneys' fees and compensation for his services as administrator.

We will first consider the plaintiff's appeal. He argues that he should be allowed the amount paid out by him as attorneys' fees and costs in securing the removal of the defendant. The general rule is that attorneys' fees cannot be recovered from the adverse party, and the only question here is, do the facts of this case bring it within any of the excep-tions to this general rule? Counsel for appellant make this citation from Sedgwick, Damages (5th ed), pp. 104, 105: "Where the act complained of is tainted by fraud, malice or insult, the jury which has the power to punish has necessarily the right to include the con-sideration of the probable counsel fees in their estimate of vindictive or exemplary damages." Attorneys' fees are not allowed under this rule as compensation, but rather as punishment for defendant's wrongful and malicious act. In other words, they may be considered in awarding exemplary damages. In the case at bar the plaintiff does not plead malice, nor did he prove such a state of facts as entitles him to recover such damages. There are, it is true, a few cases in which counsel fees

are or may be allowed,—as in actions on contracts of indemnity, suits for malicious prosecution in some states, actions upon attachment bonds, etc.,—but this case does not fall within any of these exceptions. *Irlbeck v. Bierl*, 101 Iowa, 240; *Newell v. Sanford*, 13 Iowa, 463. The defendant had the right to petition the probate court for appointment as ancillary administrator. Having this right, his motive would not make his conduct actionable. *Jayne v. Drorbaugh*, 63 Iowa, 711. But if it be conceded that he had no such right, and that his conduct was tortious, yet plaintiff is not entitled to recover attorneys' fees paid by him. *Flanders v. Tweed*, 15 Wall. 450; *Oelrichs v. Spain*, 15 Wall, 211; *Barnard v. Poor*, 21 Pick. 378.

II. Should the appellee be charged with interest on the funds in his hands? The general rule is not to charge executors or administrators with interest when their accounts are settled in the ordinary course, for the reason that they are not at liberty to risk the money belonging to the estate, and are to be always ready to pay it over according to the direction of the will or the orders of the court. If, however, they have made actual use of the funds, or delay paying over balances in their hands after demand, or, without any just reason or excuse, retain the money in their hands unemployed when it ought to be invested or paid over, they are chargeable with interest. Generally speaking, however, an executor or administrator is not *prima facie* chargeable with interest during the time the law allows for collecting the estate and settling the accounts, which is usually one year after administration is taken. While the estate is in litigation, it is the general rule not to charge interest. The evidence fails to show that the defendant used the money belonging to the estate. On the contrary, it appears that the money was deposited in a bank to the credit of the John

F. Miller estate, and was subject to check at all times thereafter. Defendant could not safely loan it for any given period because of the litigation which was pending. He made no profit whatever from the money, unless it be that it was of advantage to the bank, of which he was president, to have that amount of money in its vaults. The bank kept the money at all times subject to call, and made no profit on the deposit. Defendant was not asked to make distribution to the legatees, and, under ordinary circumstances, he would be permitted to hold the money for one year after his original appointment, without being called upon to invest or distribute the funds. In the case of *In re Gloyd's Estate*, 93 Iowa, 303, we said: "It is not always easy to determine when and to what extent an executor is justified in holding money and failing to turn it over to those ultimately entitled to it. So much depends upon the condition of the estate that much discretion must necessarily be lodged in the trial court, and we should not be justified in interfering with its action unless it clearly appears that injustice has been done." See, also, *In re Young's Estate*, 97 Iowa, 218. In view of these holdings, and of the facts above recited, we do not think the defendant should be charged with interest. It is said, however, that he wrongfully collected two notes, amounting to about four thousand dollars, which were bearing interest at seven and eight per cent., and deposited the amount in the bank of which he was president for more than one year, without interest. Sufficient answer to this claim is found in the fact that the collections were made under the order and direction of the probate court, and no attack is made upon this order.

III.    With reference to the taxes, it is claimed that the money was kept in this state, and made subject to assessment, by reason of the defendant's wrongful intermeddling with the estate, and that, as a matter of fact,

the money was not subject to assessment while in the hands of an ancillary administrator. We do not think it is true that money or property held in this state by an ancillary administrator is not subject to taxation. It may be that, if taxes were paid upon it at the place of principal administration, it should not be taxed here. But this is not the showing. It does not appear that it was ever listed in the state of Pennsylvania. Before the death of John F. Miller, the money which was being loaned by his agent was taxable in this state; and after his death, and until the transfer of the funds to the place of principal administration, it was *prima facie* taxable here. Money in the hands of an executor or administrator is not exempt from taxation simply for the reason that it is not being loaned or invested. These are general rules, which do not require the citation of authorities in their support. See, however, Code 1873, section 803, and *Cameron v. City of Burlington*, 56 Iowa, 320; *Burns v. McNally*, 90 Iowa, 432. Had there been no interference by the defendant with the administration of the estate, there is no reason to believe that the money and property belonging to the estate would not have been in this state on the first of January, 1894. It would have been unusual, to say the least, to have ordered a transfer of the fund to the place of principal administration before the expiration of a year from the time of the appointment of the ancillary administrator. There was no error in allowing the taxes paid.

IV.  We come now to defendant's appeal, and first to the order of the court refusing him credit for the amount paid his attorneys. The claim of these attorneys was for services rendered the defendant in his attempt to perpetuate himself as administrator of the estate of his deceased uncle, and not for services rendered him as such administrator. Defendant was unsuccessful in his endeavor to hold the trust, and we know of no rule of law which will permit

him to make the amount paid by him as attorneys' fees
a charge upon the estate. Had he been successful, there
would be more reason for such a claim. But he was
not; and the evidence tends to show that he made false
and untruthful statements in his original petition for
appointment as administrator. None of the heirs were
threatening a contest of the will, nor were there any
creditors of the estate in this state at the time the peti-
tion was filed. The good faith of defendant may well
be questioned. But, aside from this, we do not think
defendant is entitled to credit for the amount paid or
agreed to be paid his attorneys. It is contended
in argument that, as the probate court allowed
the defendant the sum of one thousand dollars
for his attorneys, this is conclusive, and that the order
cannot be attacked in this proceeding. No notice of the
claim or of the fact that it would be presented to the
court for allowance was given the appellant. True it is
that defendant's report showing the payment of one
thousand dollars to his attorneys was approved by the
clerk on the second day of June, 1894, and that this order
has never been set aside or vacated; and it is also true
that this action was not commenced within three
months from the time the order was made. The stat-
ute (Code 1873, section 2475) provides that "accounts
settled in the absence of any person adversely inter-
ested, and without notice to him, may be opened within
three months on his application." Now, it has gener-
ally been held that after the expiration of three months,
these settlements cannot be set aside in the absence of
mistake, fraud, or other grounds of equitable relief.
*Patterson v. Bell*, 25 Iowa, 150; *Cowins v. Tool*, 36 Iowa,
82; *Kows v. Mowery*, 57 Iowa, 20. Section 2474 of the
Code of 1873 provides, however, that "mistakes in settle-
ments may be corrected at any time before final settle-
ment and discharge of the executor." In the case of

*Cowins v. Tool,* we held that where the estate remains unsettled, and the executor has not been discharged, mistakes that have occurred may be corrected by proper action upon final settlement. Again, in the case of *Clark v. Cress,* 20 Iowa, 50, we said: "Certainly, until in a proper manner, the administrator has been duly discharged from further duties and responsibilities, a party interested is not concluded by these settlements made in his absence and without notice." See, also, *Latham v. Myers,* 57 Iowa, 519; *Dessaint v. Foster,* 72 Iowa, 639. We are of opinion that mistakes in settlements may be corrected at any time before final settlement, and that the provisions of section 2475 limiting the time within which application may be made to open up accounts settled in the absence of parties in interest have no application to mistake or fraud in the settlement of an administrator's intermediate account. At the time the clerk made the order approving the expenditure for attorneys' fees, the records showed that defendant was the lawfully appointed administrator, although the plaintiff had appealed from the order reinstating the defendant. This appeal did not stay proceedings, however, and the allowance of attorneys' fees was probably correct, in view of the condition of the record. We held on appeal that the order reinstating the defendant was erroneous, and that defendant was not entitled to represent the estate. The allowance was made under the mistaken idea that defendant was entitled to administer upon the estate. This may have been a mistake of law, but equity will, in a proper case, grant relief from such a mistake. Moreover, the claim was for service rendered the defendant in endeavoring to sustain his appointment. The district court had held with the defendant, and this gave him a *prima facie* right to counsel fees. It turned out, however, that the district court was in error; and it now appears that

defendant knew when he filed his original petition that there was to be no contest over the will, and that there were no creditors of the estate other than himself. He also knew that the will should be probated in this state, and that there was no reason for a special administrator, for the reason that he was in possession of all the property of the estate. He was further advised of the fact that the will nominated an executor. That it was a mistake to allow attorneys' fees in the face of these facts is clear. Indeed, but little, if any, more evidence is needed to establish fraud. We are of opinion that the settlement was not conclusive, and that the court below was right in charging the defendant with the amount paid his attorneys. See, as sustaining our conclusions, *Allen v. Seaward*, 86 Iowa, 718; *Meeker v. Meeker*, 74 Iowa, 352; *Bennett v. Hibbert*, 88 Iowa, 154. It follows from what has been said that the claim of these attorneys for additional compensation was properly denied.

V.   Defendant's counsel concede in argument that he is not entitled to the statutory compensation for services rendered, and they make no claim for additional services. The trial court correctly stated the account between these parties, and its judgment is AFFIRMED.